**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **BRIAN CONNELL,** | § | |
| **Movant,** | § | |
| | § | |
| **v.** | § | **No. MO: 12-CR-00340(3)-RAJ-DC** |
| | § | **No. MO: 14-CV-00037-RAJ-DC** |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

<u>**REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE**</u>

BEFORE THE COURT in this federal habeas corpus proceeding is Movant Brian Connell's ("Movant") Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion to Vacate") (Doc. 97), the Government's Response (Doc. 112), and Movant's Reply (Doc. 117). After reviewing the parties' submissions, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the United States Magistrate Judge **RECOMMENDS**, for the reasons set forth below, that Movant's Section 2255 Motion to Vacate, Set Aside or Correct Sentence be **DENIED** and that this Section 2255 proceeding be **DISMISSED**. (Doc. 97).

## I.    BACKGROUND FACTS AND PROCEDURAL HISTORY

On December 19, 2012, a federal Grand Jury sitting in the Midland/Odessa Division of the Western District of Texas, returned an Indictment charging Movant and his two co-Defendants, Miguel Angel Compean and Michelle Compean, in Count One with conspiring to smuggle goods from the United States by exporting, and attempting to export, merchandise (firearms) contrary to a law or regulation of the United States, contrary to 18 U.S.C. §§ 922(a)(6) & 924(a)(1)(A), in violation of 18 U.S.C. § 371. (Doc. 9 at 1-2). Additionally, Counts Two and Three of the Indictment, respectively, charged Movant with making false statements and representations to licensed firearms dealers by executing a Firearms Transaction Record (U.S.

1

Department of Justice, Bureau of Alcohol, Tobacco and Firearms Form 4473), stating that he

was the actual purchaser of a firearm when he was not (Count Two), and that he resided at an

address in El Paso, Texas, when he did not (Count Three), in violation of Title 18, United States

Code, Section 924(a)(1)(A).  (*Id.* at 5-7).

Movant offered to purchase firearms for his neighbor, Miguel Angel Compean.  The form

that federal regulations required Movant to fill out (Form 4473) asked whether he was the "actual

transferee/buyer" of the gun, and clearly warned that a straw purchaser (someone buying a gun on

behalf of another) was not the actual buyer.  Movant falsely answered that he was the actual buyer

when he was not and that he resided at an address in El Paso, Texas, whereas in truth and in fact,

Movant resided at an address in Odessa, Texas.  In furtherance of the conspiracy to smuggle firearms

from the United States into the Republic of Mexico, Movant was charged in the Indictment with

committing the following overt acts:

> 6.  [Movant] attempted to recruit individuals in Odessa, Texas to purchase firearms.
>
> 7.  [Movant] made three trips to San Antonio to transfer the firearms to couriers on behalf of Miguel Angel Compean. . . .
>
> 10.  On or about September 11, 2012 [Movant] purchased one (1) Zastava, Model PAP AK-47, 7.62 x 39 caliber semi automatic rifle from a business in Odessa, Texas.  [Movant] purchased this firearm for Migueal Angel Compean. . . .
>
> 13.  On September 30, 2012 [Movant] purchased two (2) Romarm/Cugir, WASR-10, 7.62 x 39 caliber rifles from a business in Mesquite, Texas.  [Movant] purchased these firearms for Miguel Angel Compean.
>
> 14.  On or about November 16, 2012, [Movant], purchased one (1) Zastava, Model PAP AK-47, 7.62 x 39 caliber semi-automatic rifle, from a business in Odessa, Texas.  [Movant] purchased this firearm for Miguel Angel Compean.
>
> 15.  On or about November 20, 2012, [Movant] purchased two (2) Zastava, Model PAP M92 PV, 7.62 x 39 caliber pistols from a business in Brenham, Texas.  [Movant] purchased these firearms for Miguel Angel Compean.
>
> 16.  On or about November 24, 2012, [Movant] purchased two (2) Romarm/Cugir, WASR-10, 7.62 x39 caliber rifles from a business in Mesquite, Texas.  [Movant] purchased these firearms for Migueal Angel Compean.
>
> 17.  On or about November 27, 2012, [Movant] purchased six (6) Zastava, Model PAP M92 PV, 7.62 x 39 caliber pistols from a business at a gun show in Dallas, Texas.  [Movant] purchased these firearms for Miguel Angel Compean.

(Doc. 9 at 3-5).

On January 14, 2013, attorney James D. Jepson was appointed as counsel for Movant.  (Doc. 34).  Mr. Jepson is the subject of Movant's ineffective assistance of counsel claims.  (Doc. 97 at 10). On February 25, 2013, Movant entered a guilty plea to Counts One and Two of the Indictment pursuant to a written plea agreement.  (Doc. 66, 70 at 1).  Specifically, Movant pleaded guilty to conspiring to smuggle firearms from the United States into the Republic of Mexico in violation of 18 U.S.C. § 554, and knowingly making a false statement "with respect to any fact material to the lawfulness of the sale" of a firearm, 18 U.S.C. § 922(a)(6), and "with respect to the information required . . . to be kept" in the gun dealer's records, 18 U.S.C. § 924(a)(1)(A).  The Government agreed to dismiss the remaining count, Count Three of the Indictment pending against Movant, at sentencing.  (*Id*. at 7).

On May 16, 2013, the District Judge sentenced Movant with respect to Count One as follows: sixty (60) months imprisonment in the United States Bureau of Prisons ("BOP") with such sentence to run concurrently with the sentence imposed in Count Two, three (3) years supervised release with such sentence to run concurrently with the sentence imposed in Count Two, no fine, and $100 special assessment.  (Doc. 81).  In addition, the District Judge sentenced Movant with respect to Count Two: sixty (60) months imprisonment in BOP with such sentence to run concurrently to the sentence imposed in Count One, three (3) years supervised release with such sentence to run concurrently with the sentence imposed in Count One, no fine, and $100 special assessment.  (*Id*.).  Count Three was dismissed with prejudice on the Government's Motion.  (*Id*.).  On May 17, 2013, the Court entered its Judgment and Commitment.  (Doc. 86).  Movant did not file a direct appeal to the United States Court of Appeals for the Fifth Circuit.  (Doc. 98 at 3).

Movant, a federal prisoner, timely filed his Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, on May 19, 2014.  (Doc. 97).  This

3

matter is before the U.S. Magistrate Judge for the Midland/Odessa Division of the Western District of Texas by Order of Referral from the U.S. District Judge for a Report and Recommendation including proposed Findings of Fact and Recommendations for Disposition pursuant to 28 U.S.C. § 636 and Appendix C of the Local Rules for the Assignment of Duties to the United States Magistrates.  (Doc. 102).  On September 18, 2014, the Government filed its Response in Opposition to the Motion to Vacate.  (Doc. 112).  On November 20, 2014, Movant filed his Reply to the Government's Response.  (Doc. 117).

## II.    MOTION TO VACATE

Movant seeks to set aside his sentence and argues that his trial counsel was ineffective during the plea phase of the underlying criminal proceeding.  (Doc. 97 at 4).  Movant claims that attorney Jepson failed "to fully explain the consequences of accepting the negotiated plea agreement," which allegedly violated Movant's "Sixth Amendment right to the effective advocacy of counsel."  (Doc. 98 at 13).  Movant also contends that his counsel was ineffective for informing him that the plea agreement was the best deal he could get.  (*Id*. at 20).  Movant makes the following sworn statements in support of his ineffective assistance of counsel claims:

> 19)     Jepson told me that he had never defended a client charged with a federal firearms offense.  This disclosure led me to question Jepson's ability to effectively represent me. . . .
> 23)     Jepson told me that I had "no defense" and that the only way to lessen my sentence would be to plead guilty.  Jepson also informed me that if I did not plead guilty the United States would move to indite [sic] me for any offenses committed with the firearms after I sold them to [Miguel] Angel [Compean].  Jepson explained that these offenses ranged from robbery to murder;
> 24)     I repeatedly asserted that I had no knowledge what-so-ever as to what [Miguel] Angel [Compean] did with the firearms or that I had not knowingly provided inaccurate information during the purchase of the firearms;
> 25)     When Jepson explained the United States plea offer to me, he informed me that it "was the best deal" he could get.  He further explained that the deal allowed for him to advocate for a "short" custodial sentence;
> 26)     At no point did Jepson tell me that my sentencing guidelines were higher than the statutory maximums sentence;

4

27)    Had Jepson informed me that I would likely receive the same custodial sentence regardless of whether I accepted the offer or went to trial I would have rejected the offer;

28)    Had Jepson told me that given the facts of the case, the likelihood that the United States would be able to bring additional charges against me was remote, I would have asserted my right to trial. . . .

(Doc. 98-1 at 4-5).

In addition, Movant asserts that he received ineffective assistance of counsel during the sentencing phase of the trial.  (Doc. 97 at 5).  Specifically, Movant claims that attorney Jepson "failed to act as the counsel guaranteed him by the Sixth Amendment, when he failed during the sentencing phase of the proceeding to assert any mitigation evidence."  (Doc. 98 at 14).  For the reasons set forth below, the undersigned recommends that these claims of ineffective assistance of counsel are without merit and should be denied.

### III.    STANDARD OF REVIEW

A prisoner serving a sentence imposed by a federal court claiming "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States," may move the court which imposed the sentence to vacate, set aside or correct the sentence. 28 U.S.C. § 2255(a).  If the court concludes that the prisoner's motion is meritorious, it must "vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).  There are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; and (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; *Hill v. United States*, 368 U.S. 424, 426−27 (1962).

Following a conviction and exhaustion of the right to direct appeal, a criminal defendant is presumed to stand fairly and finally convicted.  *United States v. Shaid*, 937 F.2d 228, 231–32 (5th

5

Cir. 1991) (en banc), *cert. denied*, 502 U.S. 1076 (1992).   Thus, Section 2255 is reserved for violations of constitutional rights and for a narrow range of errors that could not have been raised on direct appeal and would result in a compete miscarriage of justice if allowed to go uncorrected. *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).   A motion under Section 2255 "may not do service for an appeal," and the movant "must clear a significantly higher hurdle than would exist on direct appeal" in order to obtain relief.   *United States v. Frady*, 456 U.S. 152, 165 (1982).   Even if the movant alleges an error of constitutional magnitude, he generally may not raise the issue for the first time on collateral review without showing cause for the procedural default and actual prejudice resulting from the error.   *Shaid*, 937 F.2d at 232.

## IV.   EVIDENTIARY HEARING

Movant claims that an evidentiary hearing is warranted in this case to determine whether attorney Jepson's actions amount to "a denial of [Movant's] right to the 'effective assistance of counsel.'" (Doc. 117 at 4).   A district court may deny a Section 2255 motion without conducting any type of evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ."  28 U.S.C. § 2255(b); *United States v. Pena-Garavito*, 539 F. App'x 506, 506 (5th Cir. 2013) (not selected for publication); *United States v. Rivas-Lopez*, 678 F.3d 353, 358 n. 35 (5th Cir. 2012) (citing *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam)).

There is no requirement in the language of 28 U.S.C. § 2255 that the district court conduct a live hearing with the prisoner present when an evidentiary hearing is required to rule on a motion to vacate.  *See Sanders v. United States*, 373 U.S. 1, 20–21 (1963).   "A court may entertain and determine such motion without requiring the production of the prisoner at the hearing."  28 U.S.C. § 2255(c).   However, in Section 2255 cases where resolution of factual issues is required, the "contested fact issues ordinarily may not be decided on affidavits alone, unless the affidavits are

6

supported by other evidence in the record." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981) (citing *Owens v. United States*, 551 F.2d 1053, 1054 (5th Cir. 1977). Thus, in cases which factual issues are contested that cannot be resolved by affidavits, the movant must be present at the evidentiary hearing to resolve the contested factual issues. *See Hughes*, 635 F.2d at 451; *see also, United States v. Arguellas*, 78 F. App'x 984, 986–87 (5th Cir. 2003) (not selected for publication).

Importantly, prisoners who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Prisoners must also overcome the presumption of regularity and "great weight" accorded court records. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929–30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity"). A movant bringing a claim under Section 2255 that conflicts with his sworn testimony must provide "specific factual allegations" regarding the alleged violation of his constitutional rights, and these allegations must be corroborated before a hearing will be required. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). When the movant's "showing is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in light of other evidence in the record," the Court may dispense with his allegations without an evidentiary hearing. *Id*.

An evidentiary hearing is not necessary in the instant case since Movant has presented claims that are contrary to law or plainly refuted by the record. *United States v. Demik*, 489 F.3d 644, 646–47 (5th Cir. 2007) (conclusory allegations of ineffective assistance insufficient to warrant an evidentiary hearing), *cert. denied*, 552 U.S. 982 (2007); *United States v. Edwards*, 442 F.3d 258, 264

7

(5th Cir. 2006) (conclusions devoid of specific factual support do not require an evidentiary hearing), *cert. denied*, 548 U.S. 908 (2006). In opposition to Movant's Section 2255 Motion to Vacate, the Government relies on the transcript from Movant's plea hearing and the express terms of the plea agreement signed by Movant. (Doc. 112 at 2-3). "Ordinarily a defendant will not be heard to refute his testimony given under oath when pleading guilty." *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985) (quoting *United States v. Sanderson*, 595 F.2d 1021, 1021 (5th Cir. 1979) (per curiam)). Such refutations may only be heard on collateral review when the movant "offers specific factual allegations supported by the affidavit of a reliable third person. . . ." *Id*. In other words, when a Section 2255 movant makes allegations that conflict with his sworn testimony at the plea hearing, he must produce "independent indicia of the likely merit of [his] allegations, typically in the form of one or more affidavits from reliable third parties. . . ." *Cervantes*, 132 F.3d at 1110 (citing *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989)).

In the present case, Movant provides no affidavit from any reliable third person to contradict his sworn statements at the plea hearing and sentencing. To the extent that Movant's allegations in his Section 2255 Motion to Vacate are inconsistent with his solemn declarations made during the plea hearing and sentencing, he has failed to provide independent support to corroborate these claims and he is not entitled to an evidentiary hearing. Because Movant has not overcome the presumption of verity accorded to his in-court declarations, the record is adequate to fully and fairly address Movant's claims. Based on the testimony Movant gave during the plea hearing and sentencing as well as the express terms of the plea agreement, the undersigned is convinced that the record conclusively shows that Movant is entitled to no relief. Accordingly, this case may be decided without an evidentiary hearing.

## V.     CREDIBILITY FINDING

It is the responsibility of the trial court to weigh the conflicting testimony and resolve any conflicts in the testimony and evidence.  *Hall v. United States*, 489 F.2d 427, 428 (5th Cir. 1974).  After reviewing the transcripts from the plea hearing and the sentencing hearing, the Magistrate Judge finds that Movant's ineffective assistance of trial counsel claims are not credible.  Movant alleges that "at no point did [he] know, or even suspect that [Miguel] Angel [Compean] and [Michelle] Compean were engaged in any illegal activity."  (Doc. 98 at 4).  Movant claims that he "thought nothing of [Miguel] Angel [Compean]'s offer to buy firearms from him and as a result did not question [Miguel] Angel [Compean]'s motives or intentions."  (*Id.*).  Movant states that he did not "believe that he had an obligation to learn what would happen to the firearms after he sold them."  (*Id.*).  At the time he purchased the subject firearms, Movant thought that "his actions were not illegal, but rather a prime example of capitalism."  (*Id.*).

Movant's purported ignorance about the legality of his conduct is simply not believable in light of his past work experience as a federal law enforcement officer.  Movant admits that the majority of his "professional life has been spent in the field of law enforcement . . . in the area of counter-terrorism."  (*Id.* at 3).  Movant asserts that he held "high level security clearances with both the Department's [sic] of Defense and Homeland Security."  (*Id.*).  Movant "was employed as a Border Patrol Agent with the United States Office of Customs and Border Protection."  (*Id.*).  As a former federal law enforcement officer, Movant undoubtedly knew that federal gun law establishes an elaborate system of in-person identification and background checks to ensure that guns are kept out of the hands of felons and other prohibited purchasers.  18 U.S.C. § 922.  Movant would also have been aware of record-keeping requirements to assist law enforcement authorities in investigating serious crimes through the tracing of guns to their buyers.  *Id.*

Moreover, Movant's contention that he "naively assumed that [Miguel] Angel [Compean] had requested his services because of his ability to search out and obtain better deals on firearms," lacks credibility. (*Id*. at 4).  If Movant's only involvement in the underlying conspiracy consisted of "purchasing firearms for the purpose of holding them in hopes that they would increase in value," as he suggests, Movant would not have agreed to help his co-Defendant, Miguel Angel Compean, evade federal gun laws by enlisting the aid of intermediaries to execute the paperwork on his behalf.  (*Id*.).  On December 5, 2012, Movant provided ATF agents with an interview and indicated that he did sell firearms to Miguel Angel Compean with knowledge that the firearms would be resold to another buyer:

> [Movant] further advised he sold approximately six firearms to [Miguel] Angel Compean, including two Zastava pistols and four AK-type rifles.  He reported buying all six firearms for [Miguel] Angel Compean within the last three months, and [Miguel] Angel Compean paid [Movant] $1,000 per firearm. . . .  He further reported he sold [Miguel] Angel Compean the guns because [Miguel] Angel Compean's family was getting threats in Mexico.   [Miguel] Angel Compean reportedly approached [Movant] in July 2012 about purchasing AK-type firearms, and [Movant] sold [Miguel] Angel Compean two modified AK's he had at the time.  [Movant] initially stated he thought [Miguel] Angel Compean had a buyer for the firearms, and thought [Miguel] Angel Compean was making a profit from selling the guns. [Movant] said he believed [Miguel] Angel Compean sent the profits to family members in Mexico.

(PSR at 19).

Based on these admissions, Movant's allegation that he was not aware that he had violated a federal gun law by falsely responding that he was the "actual transferee/buyer" of the gun on the form federal regulations required him to fill out when he originally purchased the firearms (Form 4473), lacks credibility.  Movant was not a naïve purchaser, incidentally caught up in a conspiracy to smuggle firearms into the Republic of Mexico, as he claims in this Section 2255 proceeding.  Rather, Movant was a sophisticated buyer, experienced in federal criminal law enforcement, and knowledgeable about Miguel Angel Compean's motive and intent to obtain firearms illegally in order to elude federal authorities.

Likewise, Movant's assertion that "he considered his permanent legal residence to be in El Paso," despite having "an oil company provided apartment that was located in Odessa," is not believable. During the interview with ATF agents, Movant reported living at 3643 Eisenhower Road in Odessa since May 2012. (PSR at 18). Movant identified the residence at 11440 Lake Erie Drive in El Paso as his parents' home, where he has not lived permanently since high school. (*Id*.). Because Movant's allegations contradict his previous statements to ATF agents, Movant's claim that he "did not intentionally provide incorrect information on the firearms purchase forms" is not credible. (Doc. 98 at 5). Importantly, at sentencing, Movant asserted in open court that he received a copy of the written presentence investigation report, read it and discussed it with his attorney. (Doc. 93 at 3). Movant did not raise any objections to the facts contained within the PSR at the sentencing hearing. (*Id*. at 4).

In sum, Movant's contention that he "had no knowledge what-so-ever as to what Angel did with the firearms or that he had not knowingly provided inaccurate information during the purchase of the firearms," contradicts Movant's prior statements to ATF agents as well as his acknowledgment that the factual basis contained within the plea agreement was true. (Doc. 98 at 6). Additionally, Movant has mischaracterized the record. Movant claims that "a defendant agrees to plead guilty by way of a written plea agreement . . . in exchange for the United States making certain concessions," but in his case, "he received no such concessions." (Doc. 117 at 2). As a result, Movant concludes that "he was subjected to the exact same custodial term as he would have received had he put the United States to its burden at trial. . . ." (*Id*.). In fact, the Government agreed to dismiss Count Three of the Indictment in exchange for Movant's guilty plea, and the District Judge dismissed Count Three at sentencing with prejudice. Additionally, Movant received acceptance of responsibility credit at his sentencing hearing because he pleaded guilty. Accordingly, Movant's assertion that he received no benefit from pleading guilty and he would have received the same sentence if he had proceeded to

trial is false.   These inconsistencies call into question Movant's truthfulness generally, and specifically with respect to his assertion that his counsel's representation fell below the wide range of professional competence demanded by the Sixth Amendment.

## VI.   DISCUSSION

Movant maintains that his trial counsel was ineffective during the plea and sentencing stage of the criminal proceedings in the underlying case.  (Doc. 97 at 5-6).  In the plea context, Movant asserts that Mr. Jepson performed deficiently by telling him that "he had no defense to the allegations contained in the grand jury's indictment and that the only way to mitigate his sentencing exposure would be to enter into a plea agreement with the United States."  (Doc. 98 at 5-6).  In addition, Mr. Jepson informed Movant that if he did not plead guilty, the United States would indict him for "any and all nefarious activity associated with the firearms from the time they were sold," including robbery and murder.  (*Id*. at 6).  Further, Mr. Jepson represented to Movant that the plea offer "was the best deal" the Government was willing to offer and would result in a "short" custodial term of incarceration.  (*Id*.).  Movant argues that Mr. Jepson provided ineffective assistance by failing to explain to Movant that his guideline sentencing range would be greater than the statutory maximum, and as a result, the likelihood of a sentencing departure was significantly reduced.  (*Id*.).

At sentencing, Mr. Jepson allegedly performed deficiently by failing to refer the District Judge to character letters gathered by Movant's father.  (*Id*. at 6-7).  In addition, Movant complains that "at no point prior to sentencing did Jepson file a sentencing memorandum attempting to mitigate [Movant's] sentencing exposure or explaining what the Court should consider as it weighed the factors set forth in 18 U.S.C. § 3553(a)."  (*Id*. at 6-7).  Because Mr. Jepson failed to present any mitigation evidence to the Court at sentencing, Movant allegedly suffered prejudice by receiving the statutory maximum sentence of 60 months imprisonment for each count, to run concurrently.

After reviewing the record from the underlying criminal case, the Magistrate Judge finds that Movant's ineffective assistance of counsel claims are not credible. There has been no showing in the present case that trial counsel performed deficiently in the plea context or at sentencing. As such, Movant's claims of ineffective assistance of counsel are conclusory and completely unsupported by the record. Based on the foregoing, the undersigned recommends that Movant is entitled to no relief.

**A.      Legal Standard for Ineffective Assistance of Counsel Claims**

Claims based on ineffective assistance of counsel may be raised for the first time in a collateral proceeding, whether or not the issue could have been raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 509 (2003). The Sixth Amendment guarantees defendants the "right to effective assistance of counsel at every critical stage of the proceedings against them." *United States v. Fields*, 565 F.3d 290, 293−94 (5th Cir. 2009) (quoting *Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001)). In order to prevail on an ineffective assistance of counsel claim, the movant must show: (1) that counsel's performance was deficient; and (2) that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–91 (1984).

The burden of proof is on the movant who is alleging ineffective assistance of counsel. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999) (citing *Clark v. Collins*, 19 F.3d 959, 964 (5th Cir. 1994)). If the movant fails to prove one of the elements, it is unnecessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *see also Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

To prove deficient performance, the movant must show that his attorney's conduct fell below an objective standard of reasonableness. *United States v. Juarez*, 672 F.3d 381, 385 (5th Cir. 2012) (citing *Strickland*, 466 U.S. at 688). The Court applies a strong presumption that counsel's

professional conduct was objectively reasonable or might be viewed as appropriate trial strategy. *Strickland*, 466 U.S. at 689; *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999). Deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Fields*, 565 F.3d at 294 (quoting *Strickland*, 466 U.S. at 687). In determining the merits of an alleged Sixth Amendment violation, a court "must be highly deferential" to counsel's conduct. *Strickland*, 466 U.S. at 687. Bald conclusory statements by a defendant are not enough to sustain a claim of ineffective assistance of counsel. *Sayre v. Anderson*, 238 F.3d 631, 635–36 (5th Cir. 2001). The allegations of ineffective assistance of counsel must be supported by the record. *United States v. Johnson*, 679 F.2d 54, 58–59 (5th Cir. 1982).

To demonstrate prejudice, the movant must show that the result of the proceedings would have been different but for counsel's unprofessional errors or that counsel's performance rendered the proceedings unreliable or fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 369–72 (1993); *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009). The movant must "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. This requires a showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

**B.      Movant's Ineffective Assistance of Counsel Claims in the Plea Context**

First, Movant claims that "Jepson's failure to fully explain the consequences of accepting the negotiated plea agreement rise[s] to such a level as to trigger a violation of [Movant's] Sixth Amendment right to the effective advocacy of counsel." (Doc. 98 at 13). "[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Rivas-Lopez*, 678 F.3d at 356 (quoting *Padilla v. Kentucky*, 559 U.S. 356,

14

373 (2010)).  Providing counsel to assist a defendant in deciding whether to plead guilty is "[o]ne of the most precious applications of the Sixth Amendment . . . ."  *Grammas*, 376 F.3d at 436 (quoting *Reed v. United States*, 354 F.2d 227, 229 (5th Cir. 1965)).  When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice.  *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995).

The U.S. Supreme Court has established that claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*, and thus, are established in the same manner as any other ineffective assistance of counsel claim.  *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).  The movant must show "that [defense] counsel's representation fell below an objective standard of reasonableness."  *Id.* (quoting *Strickland*, 466 U.S. at 687–88).  In the context of pleas, a movant "must show the outcome of the plea process would have been different with competent advice."  *Lafler v. Cooper*, — U.S. —, 132 S.Ct. 1376, 1384 (2012).  There is no reason for a court to consider an ineffective assistance claim on the basis that an attorney rendered deficient performance by failing to seek or further negotiate a plea agreement if the defendant fails to make a sufficient showing that the alleged deficiency was prejudicial.  *Strickland*, 466 U.S. at 697.

In the present case, Movant contends that at the time he "made the decision to accept the United States negotiated plea offer, he did so on Jepson's mistaken advice that the plea would mitigate his overall sentencing exposure and that it would prevent the United States from bringing more serious charges."  (*Id.* at 13-14).  Absent Mr. Jepson's allegedly "inaccurate advice the plea would have been rejected."  (*Id.*).  Contrary to Movant's bald assertions, the acceptance of the Government's plea offer did in fact mitigate Movant's overall sentencing exposure and prevented the United States from bringing additional charges since the Government agreed to dismiss Count Three of the Indictment in exchange for his guilty plea.  The District Judge dismissed Count Three with

prejudice at the sentencing hearing. Because Movant has failed to show merit to his claim of ineffective assistance of counsel, it should be dismissed. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel.").

Further, Movant asserts that he had "viable defenses to each of the charges alleged against him by the Grand Jury." (Doc. 98 at 14). Movant claims that "but for Jepson's advice these defenses would have been asserted at trial." (*Id.*). However, Movant has produced no evidence, other than the instant motion, that counsel failed to inform him of viable defenses. Accordingly, Movant has failed to submit proof that he would have been found not guilty or been sentenced to a lesser charge if he had gone to trial. *Hill*, 474 U.S. at 59 (when alleged error is counsel's failure to advise of potential defenses to the crime charged, the resolution of the claim depends largely on whether the affirmative defense would have succeeded at trial).

The presentence investigation report states that Movant, after waiving his *Miranda* rights, admitted that he had not lived permanently at 11440 Lake Erie Drive in El Paso, Texas, since high school. (PSR 18). Further, Movant reported the following facts to the ATF agents:

- He purchased approximately 20 AK-style rifles in his lifetime.
- He would modify the guns and sell them for a profit.
- Miguel Angel Compean approached Movant in July 2012 about purchasing AK-type firearms, and Movant sold Miguel Angel Compean two modified AK's he had at the time.
- He sold Miguel Angel Compean two firearms in October 2012 and two more in November 2012.
- He sold approximately six firearms to Miguel Angel Compean, including two Zastava pistols and four AK-type rifles.
- He bought all six firearms for Miguel Angel Compean in a three-month period, and Miguel Angel Compean paid him $1,000 per firearm.
- He sold Miguel Angel Compean the guns because Miguel Angel Compean's family was getting threats in Mexico.
- He thought Miguel Angel Compean had a buyer for the firearms and Miguel Angel Compean was making a profit from selling the guns.
- He believed Miguel Angel Compean sent profits to family members in Mexico.
- Sometimes Miguel Angel Compean paid Movant's rent as payment for the guns.

16

(PSR at 18-19).  Movant asserted in open court at the sentencing hearing that he received a copy of

the PSR, read and discussed it with his attorney.  (Doc. 93 at 3).  Movant did not object to the facts

contained in the PSR at sentencing.  (*Id*. at 4).

A presentence report is generally sufficiently reliable evidence for factfinding under the

Sentencing Guidelines, and the Court may adopt it without further inquiry if the facts have an

adequate evidentiary basis and the defendant does not present rebuttal evidence.  *See United States v.*

*Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006).  At sentencing, Movant failed to provide any credible

evidence to rebut the facts described in the PSR.  Moreover, Movant's own admissions at the plea

hearing that the Factual Basis was true and correct provided an adequate evidentiary basis for the

facts contained in the PSR.  Movant agreed at the plea hearing that the following factual basis,

contained within the signed plea agreement, was true:

> In 2012 agents with the Bureau of Alcohol, Tobacco, and Firearms (ATF) began investigating a gun smuggling ring in the Midland/Odessa area.  Agents received information that the Defendant was purchasing firearms for another individual (later identified as Miguel Compean) and that the Defendant was recruiting people to purchase firearms.  Agents also received information that Miguel Compean lived next door to the Defendant at the time, and was also purchasing firearms to be "sent off".  Agents learned that the Defendant also traveled to gun shows in the Dallas/Fort Worth area to purchase firearms for resell.
>
> On December 5, 2012 Agents executed a search warrant at the house of the Defendant in Odessa, Texas.  On the same date agents spoke to the Defendant in Greenville, Texas.  The Defendant admitted that he had sold around six AK type firearms to the Miguel Compean.  The Defendant admitted selling the firearms for around $1,000 each.  The Defendant stated that he sold rifles to Migueal Compean and that Miguel Compean had a buyer for the weapons.
>
> Agents had been informed that Compean moved to Greenville, Texas.  On December 5, 2012 Agents approached the residence in Greenville and made contact with Compean and his wife.  The agents questioned Compean about a firearm that was in the residence.  Miguel Compean claimed the firearm belonged to the Defendant and Comepan's [sic] wife.  Miguel Compean stated that he had been living in Greenville for one week and lived in Odessa, Texas prior to that.  He admitted that the Defendant and Michelle Compean purchased firearms for Miguel Compean.  Migueal Compean stated that he had been acquiring firearms for another individual who transported the firearms to Mexico.  He would take firearms to predetermined locations, such as hotel rooms in San Antonio, Texas, and drop them off.  Another individual would then pick up the firearms and transport them to Miguel Compean's

buyer.  He stated the firearms then went to Mexico, through Eagle Pass.  Compean stated that the Defendant had purchased approximately 8 to 14 firearms during the last month and that he was paid $300.00 for each firearm.  Compean estimated that he had acquired about 20 to 30 firearms every three to four months since 2011.  All the firearms were AK-type firearms.  Miguel Compean also stated that the defendant had made approximately 3 trips to San Antonio to drop off firearms.

On November 27, 2012, Customs Borders protection officers seized three AK type weapons from car in Eagle Pass, Texas that had been abandoned at the Port of Entry into Mexico.  Two of the weapons had their serial numbers obliterated.  One of the weapons serial numbers traced back to a purchase made by the Defendant on November 24, 2012.

(Doc. 70 at 3-4).  The only portion of the factual basis that was changed related to Movant's residence.  Specifically, Movant admitted that he used an address in El Paso, Texas, as his own address on ATF form 4473.  (*Id*. at 4).  However, further investigation, surveillance, witness interviews, and records checks revealed that Movant did not live in El Paso, but instead lived at an address in Odessa, Texas.  (*Id*.).  Significantly, Movant admitted putting a false address on the ATF form 4473.  (*Id*.).

Based on these facts, Movant would have been found guilty at trial.  The Gun Control Act (the "Act"), 18 U.S.C. §§ 921–31, "establishes a detailed scheme to enable the [firearms] dealer to verify, at the point of sale, whether a potential buyer may lawfully own a gun."  *Abramski v. United States*, — U.S. —, —, 134 S.Ct. 2259, 2263 (2014).  The Act:

insists that the dealer keep certain records to enable federal authorities both to enforce the law's verification measures and to trace firearms used in crimes. A dealer must maintain [the purchaser's name, age, and residence] in its permanent files.

*Id*. (internal citations omitted).  To implement the Act, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "ATF") developed Form 4473 for gun sales.  "The part of that form to be completed by the buyer requests his name, birth date, and address, as well as certain other identifying information (for example, his height, weight, and race)."  *Id*. at 2264.

At issue in this case is Form 4473 Question 11.a, which the prospective firearm purchaser: "Are you the actual transferee/buyer of the firearm(s) listed on this form? **Warning: You are not the**

**actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you.**" *See United States v. Reid*, No. 13-20272, 2014 WL 6879100, at *1, — F. App'x —, — (5th Cir. December 8, 2014) (emphasis in original). Form 4473 also requires the buyer to affirm the following: "**I understand that answering 'yes' to question 11.a. if I am not the actual buyer is a crime punishable as a felony under Federal law.**" *Id.* (emphasis in original). Section 924(a)(1) of the Act prescribes criminal penalties for anyone who "knowingly makes any false statement or representation with respect to the information" that the Act requires "to be kept in the records of" a firearms dealer, including Question 11.a. on Form 4473. *Abramski*, 134 S.Ct. at 2262. To establish a violation of § 924(a)(1)(A), the government must prove that: (1) the dealer was a federally licensed firearms dealer at the time the events occurred; (2) the defendant made a false statement or representation in a record that the licensed firearms dealer was required by federal law to maintain; and (3) the defendant made the false statement with knowledge of its falsity. *United States v. Pena*, 541 F. App'x 453, 455 (5th Cir. 2013).

In the present case, Movant admitted to ATF agents, the undersigned Magistrate Judge during the Rule 11 plea hearing, and in factual basis of the plea agreement that he was a straw purchaser for Miguel Angel Compean and that he used a false address on the ATF form 4473. Movant's false statements were material because they prevented the firearms dealer from insisting that the true buyer (Miguel Angel Compean) appear in person, provide identifying information, show a photo ID, and submit to a background check. 18 U.S.C. § 922. Notably, Miguel Angel Compean was in the United States illegally, and thus, was not eligible to own a gun. (PSR at 15). Because the dealer could not have lawfully sold the gun had it known that Miguel Angel Compean was the true buyer, the misstatements about the actual buyer's identification and address were material to the lawfulness of the sale. Therefore, Movant's false answers on form 4473 violated federal gun law.

Movant's bare assertions to the contrary are insufficient to establish a cognizable claim in this Section 2255 proceeding.

In sum, Movant's claim of ineffective assistance of counsel in the plea context should be rejected because Movant cannot establish prejudice.  The presentence report calculated Movant's guideline range to be 78 to 97 months.  (PSR at 28; Doc. 93 at 7).  The maximum term of imprisonment for a Class D felony, is not more than 5 years imprisonment.  18 U.S.C. §§ 371, 924(a)(1)(A).  Thus, the PSR determined that the statutory maximum became the guideline sentence.  (PSR at 28).  On March 25, 2014, the District Court sentenced Movant to five years imprisonment on each count, to run concurrently.  (Doc. 93 at 8).  Movant concedes that "with or without the plea [he] was likely going to receive the same statutory maximum sentence. . . ."  (Doc. 98 at 14).  Because Movant's guideline range would have been above the statutory maximum whether or not he accepted the plea agreement, the sentencing court would have still imposed the statutory maximum of 60 months imprisonment.  Accordingly, Movant cannot establish that he suffered any prejudice as a result of his attorney's alleged failure to inform him that the guideline range for imprisonment would be above the statutorily authorized maximum sentence.  Movant's failure to establish prejudice defeats his ineffective assistance claim.

Moreover, Movant's claim that Mr. Jepson failed to explain the application of the Sentencing Guidelines is unavailing.  Movant explains that "[p]ursuant to the terms of a negotiated plea agreement, [he] on February 25, 2013 appeared before the Court and formally entered a change of plea, thereby pleading guilty to all three counts in the indictment."  (*Id*. at 2).  During the plea hearing, the undersigned Magistrate Judge informed Movant of his rights and "inquired as to the knowing and voluntary nature of [Movant's] decision to plead guilty."  (*Id*. at 2-3).  The undersigned Magistrate Judge determined that Movant knowingly and voluntarily entered into the plea agreement filed with the Court.  (Doc. 68 at 1).

Further, the undersigned found that Movant "is fully competent and capable of entering an informed plea, that [Movant] is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense." (*Id.*).  Notably, Movant "was admonished as to the statutory penalty range of **each Count ONE and TWO** of up to 5 years imprisonment, a fine not to exceed Two Hundred Fifty Thousand Dollars ($250,000.00), up to 3 years supervised release, and a One Hundred Dollar ($100.00) mandatory special assessment." (*Id.*) (emphasis in original).  Finally, Movant was admonished that "**the District Judge could order the punishment for Counts One and Two to be served consecutively**" and "<u>**the District Judge would order him to pay any restitution, whether that amount is agreed upon or disputed at sentencing**</u>." (*Id.*) (emphasis in original).

At the plea hearing, the undersigned Magistrate Judge advised Movant about how the Sentencing Guidelines would be applied to his case, the repercussions of pleading guilty to the Indictment, how his sentence would be calculated, and how the application of relevant conduct would affect his case.  (Docs. 66, 68).  Movant's sworn statements at the plea hearing establish that the entry of his guilty plea was voluntarily made and he knew the consequences of his plea.  These sworn statements, made in a solemn court proceeding, carry a strong presumption of verity, which Movant has failed to overcome.  *See Blackledge*, 431 U.S. at 74.

Movant has offered nothing beyond conclusory allegations and bald assertions to show that counsel failed to advise him about the consequences of pleading guilty.  The record reflects that Movant understood that he faced a potential maximum sentence of "up to five years imprisonment," when he entered his guilty plea.  (Doc. 68 at 1).  Therefore, he understood the consequences of pleading guilty.  *United States v. Valdez*, 578 F. App'x 366, 367 (5th Cir. 2014) (per curiam) (not selected for publication) (citing *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990)).  As such,

21

Movant's claim of ineffective assistance of counsel in the plea context is wholly speculative and conclusory.  Since Movant has failed to meet his burden of proof, the Magistrate Judge finds that this ground lacks merit and should be denied.

**C.      Movant's Ineffective Assistance of Counsel Claims Relating to Sentencing**

In his second claim of ineffective assistance of counsel, Movant "complains that Jepson failed to act as the counsel guaranteed by the Sixth Amendment, when he failed during the sentencing phase of the proceeding to assert any mitigation evidence."  (Doc. 98 at 14).  Movant explains that Mr. Jepson instructed Movant's father to gather character letters to be used "at sentencing to show that the vast majority of [Movant's] life was led in a law-abiding and productive manner."  (*Id*. at 6).  Yet, Movant claims that "Jepson did not mention the letters once at sentencing" and "at no point prior to sentencing did Jepson file a sentencing memorandum attempting to mitigate [Movant's] sentencing exposure or explaining what the Court should consider. . . ."  (*Id*. at 6-7).  Because Movant has failed to show *Strickland* prejudice, the undersigned recommends that this claim is also without merit and should be denied.

Movant's contentions of ineffective assistance of counsel at sentencing are unsupported, and "[m]ere conclusory statements do not raise a constitutional issue in a habeas case."  *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982).  While Movant contends that "Jepson did not even bother to mention the numerous letters of support that had been provided to show the positive influence [Movant] had on those he came into contact with," a review of the transcript from the sentencing hearing reveals that the District Judge did consider these letters:

> THE DEFENDANT:   I've served under this flag, and I've been an outstanding citizen, and I slipped up.  And I don't know if you received my letter, sir, but I did send you a letter.
> THE COURT:  I did get that.  Yes, sir, I did.  Thank you for sending it.  And I got some from some of your friends and family as well.  I appreciate receiving those very much.

(Doc. 93 at 6).   Accordingly, the Court was made aware of the letters at sentencing as well as Movant's past service to his country.

Movant fails to specify what other mitigating evidence, if any, his counsel should have presented during sentencing.   Importantly, the PSR recognized that Movant had no prior criminal history.   (PSR at 22-23).   Further, the PSR reported that Movant was formerly employed with the United States Border Patrol, ICE, and Department of Defense.   (PSR at 25).   According to the PSR adopted by the District Judge, Movant worked as a detention and removal officer with Immigration and Customs Enforcement (ICE) in the El Paso sector, an agent with United States Border Patrol at the Santa Teresa, New Mexico border station, and a combat trainer and counter-terrorism instructor for the United States Department of Defense at Fort Bliss, Texas.   (PSR at 26-27).   Therefore, any elaboration by Mr. Jepson concerning Movant's past work experience in federal law enforcement would have been merely cumulative of facts presented in the PSR and already considered by the District Judge.

Because the District Judge expressly referenced and considered the letters from Movant's family and friends at the sentencing hearing as well as the facts contained in the PSR concerning Movant's personal history and prior employment with the United States Border Patrol, ICE, and Department of Defense, there is no evidence that Mr. Jepson's failure to further elaborate on the content of these letters and Movant's past service to his country constituted ineffective assistance. Accordingly, Movant has not established that he was subjected to additional jail time as a result of Mr. Jepson's alleged failure to "seek a departure/variance as a result of [Movant's] decorated service to his country [and] the numerous letters of support that had been sent . . . ."   (Doc. 117 at 4).   Since Movant cannot show prejudice, this claim of ineffectiveness should be denied.

23

## VII.   CONCLUSION

A hearing is not required on claims based on unsupported generalizations or on conclusory or speculative claims.   *United States v. Martinez*, 181 F.3d 627, 629 (5th Cir. 1999) (vague and conclusory allegations not sufficient to trigger a hearing); *United States v. Fishel*, 747 F.2d 271, 273 (5th Cir. 1984) (conclusory and speculative allegations not sufficient to warrant a hearing).   In their current state, Movant's allegations fail to state a cognizable constitutional violation under 28 U.S.C. § 2255.   It is, therefore, the recommendation of the Magistrate Judge that Movant's request for an evidentiary hearing and his Section 2255 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody be **DENIED.**   (Doc. 97).

## VIII.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."   28 U.S.C. § 2253(c)(1)(A).   Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability ("COA") may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2).   The Supreme Court of the United States fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   In cases where a district court rejected a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   *Id*.; *see also, Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003).   According to the Supreme Court:

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of

24

reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack*, 529 U.S. at 484.  In this case, it is respectfully recommended that reasonable jurists could not find the dismissal of Movant's Section 2255 case on substantive or procedural grounds debatable or wrong, nor could reasonable jurists find that the issues presented are adequate to deserve encouragement to proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).  Accordingly, it is recommended that the Court find that Movant is not entitled to a certificate of appealability as to his claims.

## IX.  RECOMMENDATION

In accordance with the preceding discussion, the undersigned **RECOMMENDS** that the District Court **DISMISS WITH PREJUDICE** Movant Brian Connell's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255.  (Doc. 97).  It is further recommended that a certificate of appealability be **DENIED**.  Finally, it is recommended that any pending motions be **DENIED** as moot.

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

In the event that a party *has not been served* by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court.

Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

SIGNED this 10th day of February, 2015.

DAVID COUNTS
U.S. MAGISTRATE JUDGE